**In the United States District Court
for the District of Kansas**

---

Case No. 24-cv-02038-TC

---

CHRISTOPHER D. L.,[1]

*Plaintiff*

v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

*Defendant*

---

**MEMORANDUM AND ORDER**

Plaintiff Christopher L. claims that he is disabled and cannot work due to physical and mental impairments. He seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income benefits pursuant to 42 U.S.C. §§ 1381a, 1382. For the following reasons, the Commissioner's final decision is affirmed.

**I**

**A**

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support

---

[1] Plaintiff is referred to only by first name and initials to protect his privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, a court will "not reweigh the evidence or try the issues de novo," but will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.*

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in

2

light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

## B

Plaintiff claims he is unable to work due to severe mental and physical impairments. Doc. 10 at 1.[2] After his initial claim was denied, the ALJ affirmed the denial. *Id.* at 2. Plaintiff appealed to the Appeals Council, which declined review. *Id.* Plaintiff then appealed to the District of Kansas, which remanded for further administrative proceedings. *Id.* After holding another hearing, the ALJ again denied Plaintiff's claim. *Id.* Plaintiff now appeals.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability. Adm. Rec. at 706. At step two, the ALJ found that Plaintiff had the following severe impairments: "attention deficit hyperactivity disorder, anxiety, depression, bipolar affective disorder, multilevel degenerative disc disease, post-traumatic stress disorder, obesity, and social anxiety disorder." *Id.* The ALJ also found that Plaintiff had several non-severe impairments. *Id.* The ALJ then proceeded to step three and determined that Plaintiff did not have an impairment that met or medically equaled a listing. *Id.* (citing 20 CFR §§ 416.920(d), 416.925, 416.926).

The ALJ then proceeded to define Plaintiff's RFC. Adm. Rec. at 709. The ALJ found that Plaintiff could "perform light work as defined in 20 CFR 416.967(b)." *Id.* Specifically,

> the claimant may occasionally climb ladders, ropes, scaffolds, ramps, and stairs. The claimant should avoid concentrated exposure to extreme cold temperatures and weather, to vibration, and to hazards (e.g. dangerous machinery, unprotected heights). The claimant can understand, remember, and execute simple work, defined as routinized and detailed but uninvolved instructions applying commonsense understanding, and can

---

[2] All document citations are to the document and page number assigned in the CM/ECF system except for factual references to the Administrative Record (Adm. Rec.).

> maintain concentration, persistence, and pace in so doing. The claimant may occasionally interact with supervisors, but cannot tolerate close "over-the-shoulder" supervision. The claimant may occasionally interact with colleagues if meetings are brief and task oriented, and may occasionally interact briefly with the public in non-transactional roles (i.e. roles that do not involve sales, negotiation, customer service, dispute resolution, and the like). The claimant may work in locations devoid of dense crowds (e.g. fairs, festivals, busy retail locations). The claimant may perform low stress work, defined as only occasional workplace changes, making occasional simple decisions, and performing tasks in which the individual has some control over work pace subject to ordinary overall production requirements.

*Id.* at 709–10. The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* at 710. The ALJ also considered medical opinions and prior administrative medical findings. *Id.*

At step four, the ALJ determined that Plaintiff could not perform his past work as a laborer, hand packer, or stainer. Adm. Rec. at 717. The ALJ then proceeded to step five. Relying on vocational experts, the ALJ determined that suitable work for someone with Plaintiff's age, education, experience, and RFC exists in significant numbers in the national economy. *Id.*

Plaintiff now contends that the ALJ made two errors. He first argues that the ALJ's RFC determination was improper because the ALJ failed to assess the RFC on a function-by-function basis. Doc. 10 at 27. And second, he argues that the ALJ failed to support the RFC determination with substantial evidence regarding his mental and physical limitations. *Id.* at 29, 38.

## II

Plaintiff argues that the ALJ's RFC determination was legally flawed and not supported by substantial evidence. But the ALJ did not apply the wrong legal standard, and Plaintiff has failed to establish the absence of substantial evidence to support the ALJ's factual findings. As a result, the Commissioner's final decision is affirmed.

4

## A

Plaintiff claims the ALJ erred at step four by failing to assess his function-by-function capacity. Doc. 10 at 27. Specifically, he argues that the ALJ did not follow SSR 96-8p, which requires the ALJ to first consider the claimant's ability to perform specific work-related functions. *Id.* at 28. Plaintiff argues that the ALJ applied the wrong legal standard and determined that Plaintiff could perform light work without first assessing Plaintiff's functional capacities. *Id.*

Social Security Ruling 96-8p explains how ALJs must determine a claimant's RFC. 1996 WL 374184, at *1. It specifies that "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id.* "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Id.*; *see Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014). The premise is simple: ALJs must determine the claimant's actual physical abilities before determining the appropriate level of work that the claimant can perform. ALJs are to consider seven functions: "Sitting, standing, walking, lifting, carrying, pushing, and pulling." 1996 WL 374184, at *5.

The ALJ's RFC determination did not run afoul of SSR 96-8p. *Contra* Doc. 10 at 27. The ALJ addressed Plaintiff's ability to sit and stand, noting that a physical examination showed Plaintiff could "squat and rise from that position" and was "able to rise from the sitting position without assistance." Adm. Rec. at 712 (citing Adm. Rec. at 630). The same physical examination showed that Plaintiff could "walk on his heels and toes with ease" and that his "tandem walking was normal and he could hop on one foot bilaterally." *Id.* Additionally, the ALJ relied on testimony from Plaintiff's mother, who noted that Plaintiff could walk, help with lifting around the house, and do lawn work. *Id.* at 716 (citing Adm. Rec. at 305–09). And other evidence shed light on Plaintiff's strength. *See, e.g.*, *id.* at 711–16 (noting that Plaintiff visited a doctor after carrying a toolbox, visited a doctor after lifting a heavy stone, suffered an injury after taking out the trash, and described helping "friends with activities such as moving and lifting heavy objects"). After laying out all the evidence necessary to consider the seven relevant functions, the ALJ then explained the RFC determination. *Id.* at 713. That is sufficient. *See Hendron*, 767 F.3d at 957 (noting that courts must "exercise common sense," "cannot insist on technical

perfection," and may not reverse when they can "follow the adjudicator's reasoning").

Plaintiff's argument seems to be that the ALJ's failure to address each of the seven functions one by one constitutes reversible error. Not so. In *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020), for example, the Seventh Circuit concluded that remand was unnecessary if the federal court "can tell that the ALJ considered the claimant's ability to perform all seven functions." In other words, when a federal court can follow the ALJ's reasoning and determine that the correct legal standard was followed, mere technical omissions are harmless error that do not dictate reversal. *Hendron*, 767 F.3d at 957. That is the case here.

**B**

Plaintiff further argues that the RFC determination was unsupported by substantial evidence. Doc. 10 at 29, 38. Specifically, he argues that the ALJ did not adequately consider his mental and physical limitations. *Id.*

The ALJ's findings regarding Plaintiff's mental limitations were supported by substantial evidence. *Contra* Doc. 10 at 29. The ALJ noted that, as early as 2020, Plaintiff reported that he felt good, that his depression had "let up," and that he was not irritated. Adm. Rec. at 714. Other treatment notes showed that Plaintiff said his temper was "well controlled," that he was "alert and oriented, with good appearance," and that he had "normal speech, behavior, memory, judgment thought content and thought process." *Id.* Mental examinations in 2022 showed that Plaintiff had "appropriate mood and affect" and behaved normally. *Id.* at 715. The ALJ also relied on Plaintiff's own description of his ability to engage in the activities of daily living, help friends with moving and lifting heavy objects, and communicate with medical providers. *Id.* at 716. Based on this evidence, the ALJ concluded that Plaintiff's symptoms did not rise to the level of severity that he asserted and did not impair his ability to work as he alleged. *Id.* at 717; *see Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (affirming the ALJ's consideration of the claimant's activities of daily living vis-à-vis the severity of her symptoms). Plaintiff may disagree with how the ALJ weighed this evidence, but that is a task reserved to the ALJ. *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). Where evidence can support a conclusion either way, the ALJ's conclusion is not to be disturbed. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Plaintiff's arguments ask for a reconsideration of the evidence,

something a federal court may not do. *Hendron*, 767 F.3d at 956. Federal district courts are not "at liberty to second-guess" the ALJ's reasoned and supported determination. *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1182 (10th Cir. 2020).

As part of this argument, Plaintiff takes issue with the ALJ's finding that the opinion of Dr. Richard Kaspar was unpersuasive. Doc. 10 at 29. Specifically, Plaintiff argues that the ALJ did not give a legitimate reason for rejecting Dr. Kaspar's opinion that Plaintiff may have difficulty with detailed or complex tasks. *Id.* at 32.

That argument is belied by the record. The ALJ explained that Dr. Kaspar's opinion was inconsistent with recent mental examinations showing that Plaintiff was fully oriented and had appropriate mood and affect, and that it was rendered without the benefit of the entire record. Adm. Rec. at 715. The ALJ also explained that other evidence in the record contradicted Dr. Kaspar's opinion, such as the opinion of Social Worker Ashleigh Dooley showing that Plaintiff was punctual, could set reminders on his phone, and was pleasant.[3] *Id.* at 716. Once again, Plaintiff asks for a reconsideration of the weight given to Dr. Kaspar's opinion, something a federal court may not do. *Grogan*, 399 F.3d at 1262. Yet even if de novo review were to suggest that Dr. Kaspar's opinion is more persuasive than the ALJ found it to be, that does not dictate that the ALJ's factual findings were not supported by substantial evidence. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (quoting *U.S. Cellular Tel., L.L.C. v. City of Broken Arrow, Oklahoma,* 340 F.3d 1122, 1133 (10th Cir.2003)). "[Courts] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084.

---

[3] Plaintiff argues that the ALJ should not have considered Dooley's opinion because she is "not an acceptable medical source." Doc. 10 at 32. It appears that that is incorrect, 20 C.F.R. § 416.902(i), and that, in any event, ALJs may assess the consistency of a medical opinion by considering both medical and nonmedical opinions. 20 C.F.R. § 416.920c(c)(2). On reply, Plaintiff does not dispute that the ALJ could consider Dooley's opinion even if she were a nonmedical source. Doc. 17 at 10–11.

Plaintiff's final argument is that the ALJ did not adequately consider his physical limitations. Doc. 10 at 38. Specifically, he argues that the ALJ should have added additional limitations to the RFC based on Plaintiff's severe multilevel degenerative disc disease and obesity, and that the ALJ did not "link" the medical evidence to the RFC. *Id.* at 38–39.

Plaintiff fails to show the absence of substantial evidence. *Contra.* Doc. 10 at 38. As described above, the ALJ relied on evidence in the record, noting that Plaintiff's symptoms were not as severe as he alleged. For example, the ALJ noted that Plaintiff himself described moving and lifting heavy objects, that he was injured lifting a heavy stone, and that he helped his mother with lifting and lawn work. Adm. Rec. at 716. The ALJ also considered the opinion of Dr. Charles Lee, who was aware of Plaintiff's obesity and disc disease and found that Plaintiff could walk with ease, rise and sit, and hop on one foot. *Id.* at 714; *see id.* at 140. And Plaintiff's argument that the ALJ did not have a narrative linking the medical evidence with the RFC is unpersuasive. The ALJ explained Plaintiff's medical history and specifically noted where the record was inconsistent with Plaintiff's alleged symptoms. Adm. Rec. at 710–11; *see Hendron*, 767 F.3d at 954 (affirming where the ALJ "thoroughly reviewed the medical evidence" and "specifically noted where the evidence was inconsistent with [the claimant's] claims of extreme limitations"). Simply put, Plaintiff requests an impermissible reweighing of the evidence. *See Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013) (citing *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007)) ("We review only the *sufficiency* of the evidence, not its weight.") (emphasis in original).

### III

For the foregoing reasons, the Commissioner's final decision is affirmed.

It is so ordered.

Date: September 17, 2025           s/ Toby Crouse  
                                                        Toby Crouse
                                                        United States District Judge